# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA ENGLISH and RICHARD ENGLISH, her husband, | : |
| | : |
| Plaintiffs | CIVIL ACTION NO. 3:13-0978 |
| | : |
| v | |
| | : (JUDGE MANNION) |
| CROWN EQUIPMENT CORPORATION, | : |
| | |
| Defendant | : |

## MEMORANDUM

Presently before the court in this products liability negligence action are three opposed motions in limine filed by defendant Crown Equipment Corporation ("Crown") regarding plaintiff Patricia English's ("plaintiff") remaining negligent design claim and her strict liability design defect claim with respect to only the stock picker's steering wheel fastening system.[1] Also pending is Richard English's derivative loss of consortium claim. For the following reasons, the motions in limine are **GRANTED IN PART** and **DENIED IN PART**.

Crown requests oral argument with respect to its motions. The court has reviewed the filings of the parties and finds, in its discretion, there is not a need for oral argument. As such, the request will be **DENIED**.

This is a strict liability and negligence action arising from an incident in

---

[1]Crown filed an additional omnibus motion in limine. (Doc. 62).

which plaintiff was injured at work on April 18, 2011. Plaintiff was employed as a laborer for the Wal-Mart Distribution Center in Pottsville, Pennsylvania when she was injured while operating stock picker number 201 allegedly caused by a malfunction in the steering wheel fastening system. Plaintiff alleges that while she was operating a model 30SP48TT-330 stock picker, manufactured by Crown and sold to Wal-Mart, the machine turned off and came to an abrupt stop forcing her to go forward and then back, causing her body to twist. The steering wheel then allegedly fell off of the stock picker onto plaintiff's right knee and foot. As a result, plaintiff alleges that she sustained serious bodily injuries, including a right knee sprain, a medial meniscus tear of the right knee, injuries to her back, as well as bruises to her body. Plaintiff alleges that prior to her accident, Crown knew or should have known that the design of the steering wheel fastening system on its stock picker machines was defective and unreasonably dangerous. Specifically, plaintiff alleges that Crown should have known that the design and manufacture of the steering wheel fastening system of the stock picker machine demonstrated a foreseeable and unreasonable risk of harm resulting in an increased likelihood of serious injury or death.

 Plaintiff is, in part, proceeding on a theory of strict product liability, under the recent Pennsylvania Supreme Court decision in Tincher v. Omega Flex,

Inc., 104 A.3d 328 (Pa. 2014), against Crown.² Plaintiff alleges that the stock picker's steering wheel fastening system had a design defect. Since the Pennsylvania Supreme Court in *Tincher* declined to adopt Third Restatement of Torts in the context of design defect cases, plaintiff is proceeding on her design defect strict liability claim pursuant to Section 402A of the Second Restatement of Torts.³ Also, "the Pennsylvania Supreme Court just recently clarified in *Tincher v. Omega Flex, Inc.* that, under Pennsylvania law, Section 402A governs only strict liability claims, and that common law negligence claims are subject to a different standard and analysis." Schwartz v. Abex Corp., 106 F.Supp.3d 626, 635 (E.D.Pa. May 27, 2015) (citing Tincher, 104 A.3d at 336, 345, 358, 381-83, 384). Thus, plaintiff's remaining negligence claim is not subject to the same standard and analysis as her strict liability claim.

The legal issue for trial is whether the Crown stock picker's steering

---

²Jurisdiction of this court is based on diversity pursuant to 28 U.S.C. §1332(a). As such, the substantive law of Pennsylvania law is utilized. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938); *see also* Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464 (1945).

³In Tincher, 104 A.3d at 399, the PA Supreme Court overruled Azzarello v. Black Brothers Co., Inc., 480 Pa. 547, 391 A.2d 1020 (Pa. 1978), but "declined the invitation to fill the void by simply 'adopting' the Third Restatement [of Torts] formulation" with respect to "the appropriate standard of proof of a [design defect] strict liability claim in Pennsylvania." Thus, "Pennsylvania remains a Second Restatement jurisdiction" in design cases and a strict liability cause of action sounds in tort. Tincher, 104 A.3d at 399-400.

3

wheel fastening system was defectively designed and unsafe. In Tincher, 104 A.3d at 383, the Pennsylvania Supreme Court stated that the non-delegable duty in a strict liability case is "a person or entity engaged in the business of selling a product has a duty to make and/or market the product—which 'is expected to and does reach the user or consumer without substantial change in the condition in which it is sold'—free from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.'" (citing Restatement (2D) of Torts §402A(1)). "To demonstrate a breach of duty in a strict liability matter, a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition.'" Tincher, 104 A.3d at 384. Additionally, "in Pennsylvania, the cause of action in strict products liability requires proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product." Id. at 401. The alternative test standard of proof is a "composite", *i.e.*, a standard of proof which states the consumer expectations test and the risk-utility test in the alternative. Id. at 402. "[T]he strict liability cause of action theoretically permits compensation where harm results from risks that are known or foreseeable ... and also where harm results from risks unknowable at the time of manufacture or sale ...." Id. at 404-05.

The trial in this case is scheduled to commence on May 31, 2016.

First, Crown moves to exclude statements that its service personnel were at the Wal-Mart in Pottsville the night before plaintiff's accident to

4

inspect, repair, service, and/or maintain the stock picker. (Doc. 63). Crown contends that such testimony is inadmissible hearsay and is inadmissible under Federal Rules of Evidence 402 and 403.

Second, Crown moves to exclude testimony and evidence of any alleged injuries of plaintiff that are wholly unrelated to her April 18, 2011 accident as irrelevant. (Doc. 64).

Third, Crown moves to exclude testimony and evidence of any alleged past problems with the stock picker that are wholly unrelated to plaintiff's April 18, 2011 accident as irrelevant. (Doc. 65).

Crown has briefed its motions with exhibits. (Doc. 66, Doc. 67, Doc. 68). Plaintiff filed her briefs in opposition to all three motions with exhibits. (Doc. 70, Doc. 71, Doc. 72). Crown did not file reply briefs.

The motions presently at issue seek, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The court will now address Crown's motions in limine seriatim.

5

In her deposition, (Doc. 40-4, Doc. 40-9, at 5-6, Doc. 66-1), plaintiff testified that on April 17, 2011, she did a pre-operation check list on stock picker number 201 and went to work. At the end of her shift, the stock picker would only back up and definitely had a problem. Plaintiff went to management and then to maintenance notifying them of the problems. She then took stock picker 201 to maintenance and went home. On April 18, 2011, when plaintiff returned to Wal-Mart for work she stated that she was told Crown came on Monday while she was not there and serviced stock picker 201. She did not recall speaking to any Crown mechanics. Specifically, plaintiff stated that she was told by the Wal-Mart Manager of Quality Assurance, Denise (last name unknown), that Crown service personnel were at Wal-Mart and "they took the machine apart and put it back together and there was nothing wrong [with] the machine." Additionally, plaintiff stated that Tori (last name unknown), the Wal-Mart, OPS manager for maintenance, also told her that "Crown was there today with him and that the machine was perfectly fine." (Id.). Plaintiff stated that she then took stock picker number 201 to perform her work since the others were locked out.

Crown states in its brief,(Doc. 66, at 5), as follows:

> "[n]either of these co-workers, "Denise" or "Tori," has testified to these alleged statements nor will be a witness at trial. Therefore, this second-hand co-worker testimony is blatant hearsay - the out-of-court statements of other persons offered for their truth. *See, e.g.*, Smith v. City of Allentown, 589 F.3d 684, 693-94 (3d Cir. 2009) (co-worker statement "is itself therefore hearsay, and it appears to be beyond the reach of any exception to the hearsay

6

rule"); Straka v. Comcast Cable, 897 F.Supp.2d 346, 360 (W.D.Pa. 2012) (plaintiff's testimony "derived solely from those two [co-worker's] statements made to plaintiff on the job" was inadmissible hearsay); Meyer v. Callery Conway Mars HV, Inc., 2015 WL 65135, at *10 n.5 (W.D.Pa. Jan. 15, 2015) ("statements [of] three of [plaintiff's] former coworkers" were inadmissible hearsay where plaintiff "did not depose any of those individuals"). Because this testimony is inadmissible hearsay, it should be excluded from trial.

The court finds that the testimony of the plaintiff regarding what she was told by Denise and Tori about Crown being at Walmart the night before her accident to inspect and service stock picker 201 is indeed inadmissible hearsay. *See* Fed.R.Evid. 801. Plaintiff offers the alleged statements made to her by Denise and Tori for the truth of the matter asserted, *i.e.*, Crown personnel thoroughly checked out the stock picker the night of April 17, 2011 and found nothing wrong with it. Further, no hearsay exception applies. Plaintiff does not point to any other evidence to substantiate this testimony that Crown inspected the stock picker on April 17, 2011, and she admitted that she did not see any records indicating that Crown was at Walmart the night before the accident and found the stock picker worked perfectly fine. Further, plaintiff admitted that she never personally spoke to anyone from Crown about the maintenance of the stock pickers. Nor did plaintiff know if the reference to Crown by Denise and Tori related to a dealership that Crown owned or was a local dealer who had an independent dealership that represented Crown. (Doc. 66-1).

Moreover, Ronald Grisez of Crown testified that he did not find any

evidence that any Crown employee had any involvement in the care or maintenance of stock picker number 201 after 2006. (Doc. 66-2). Also, Ronald Tessing of Walmart testified that Walmart's maintenance department would perform the preventive maintenance on the stock pickers and, if it was behind in the work and needed assistance the local Crown dealer, Lifting, Inc., would be called. Tessing stated that Crown would not be directly called. (Doc. 66-3).

Thus, unless plaintiff calls Denise and/or Tori to testify at trial or has a copy of Crown's service records, the stated testimony will be excluded as hearsay. In fact, plaintiff does not oppose the granting of Crown's Doc. 63 motion in limine. (Doc. 71).

Accordingly, Crown's Doc. 63 motion in limine is **GRANTED**. Plaintiff is precluded from presenting testimony that Crown was at the Pottsville Wal-Mart Distribution Center the night before her accident to inspect, repair, service, and/or maintain the subject Crown stock picker.

Crown next moves to exclude testimony and evidence of any alleged injuries of plaintiff that are unrelated to her April 18, 2011 accident. (Doc. 64). Crown states that it anticipates plaintiff will testify she sustained numerous injuries unrelated to the accident at issue, including back injuries, and that this testimony is irrelevant to the issues in this case. As mentioned, plaintiff alleges that while she was operating the Crown SP48 stock picker, the machine turned off and came to an abrupt stop forcing her to go forward and

8

then back, causing her body to twist. She then alleges that the steering wheel fell off of the stock picker onto her right knee and foot. Plaintiff alleges that she sustained serious bodily injuries, including a right knee sprain, a medial meniscus tear of the right knee, injuries to her back, as well as bruises to her body.

In her deposition, plaintiff testified that before the accident she was receiving medical treatment at Excel Pain Management for wear and tear injuries to her back which occurred over time while driving the stock pickers from all the impact, the bouncing, the turning, the absorbing of the shock with her back and knees, and the daily abuse. She stated that when traveling on the stock picker and going down certain levels in the distribution center, her back took the "whole brunt" of the shock. Plaintiff indicated that on occasion she would be working for "13 [to] 14 hours straight." Plaintiff stated that she attributed her back pain and back injury "a hundred percent" "from the [stock picker] machine." Plaintiff admitted that she did not attribute her back injury as being related to the April 18, 2011 accident and that her back injury started well before the accident when she started operating the stock picker. Plaintiff stated that the accident did cause her to have a lot of problems with her hip. (Doc. 68-1).

Plaintiff also testified that she had been treating with Dr. Gideon since 2008 for chronic pain in her right shoulder and lumbar spine. Plaintiff continued with this treatment for chronic pain by Dr. Gideon after the accident

9

at issue and she was prescribed chronic pain medication. (Doc. 70-2, at 11, 14).

In plaintiff's expert disclosure under Rule 26(a)(2), she indicated that her medical expert was Dr. Edwin Malloy, an orthopaedic surgeon, who first examined plaintiff on May 10, 2011. Dr. Malloy will testify that as a result of the April 18, 2011 accident, plaintiff suffered an aggravation of her pre-existing osteoarthritis of the right knee and that she sustained either a new tear or an aggravation of a pre-existing tear of her right medial meniscus. Dr. Malloy will also testify that plaintiff is disabled from her normal customary work primarily due to her right knee injury sustained on April 18. Further, Dr. Malloy opines that at some time in the future ("[his] best guess would be within five years") plaintiff will require a total knee arthroplasty as a result of her right knee injury caused by the accident at issue. (Doc. 68-2).

In his February 20, 2012 treatment note, Dr. Malloy indicated that plaintiff "had a previous tear in her right rotator cuff." He also indicated that "she [presently] has two work comp injuries, the right shoulder and her knee injury[,] [and that] she did injure her knee and most likely has a tear of the meniscus." Plaintiff was still disabled from work at this time. Dr. Malloy also stated that since plaintiff was "unable to recover from [her April 18, 2011] injury and it appears to me as though she will not recover and she is permanently disabled from meaningful, gainful employment." He thus concluded that in his opinion plaintiff "appears to be chronically disabled for

10

work of any type and it appears as though this may be permanent."

In his June 6, 2012 treatment note, Dr. Malloy again indicated that plaintiff "has two workman compensation injuries [from the accident], the right shoulder and her knee." (Id. at 78-80).

In his July 12, 2012 treatment note, Dr. Malloy stated that plaintiff's hip pain "is secondary to radiculopathy from chronic lumbar disc disease." He then stated that "[t]his is not a direct relation to a work related injury but [is] in my opinion, pre-existing non work related injury that has been severely aggravated by her work related injury which has involved her right shoulder and right knee." Thus, Mr. Malloy opined that while plaintiff's chronic lumbar spine condition was a pre-existing condition not caused by the accident on April 18, 2011, the accident aggravated this condition. (Id. at 81).

Crown argues that plaintiff's expert testimony only links her right knee injury to the subject accident. Crown also points out that plaintiff has admitted that her back injuries are not a result of the accident. Thus, Crown contends that only plaintiff's right knee injury can be introduced at trial and that any testimony and evidence regarding other, unrelated injuries are irrelevant under [Fed.R.Evid. 402](#) and lack the requisite medical expert support.

In her brief in opposition, (Doc. [70](#)), plaintiff states that she should be allowed to present testimony and evidence regarding injuries to her back and shoulder in addition to her right knee injuries since she has produced evidence of these other injuries during discovery. She attached a copy of her

11

Initial Rule 26 Disclosures to her brief, (Doc. 70-1), in which she identified the following tangible evidence and documents:

1. Medical records of Physicians Health Alliance;
2. Medical records of Dr. Edwin Malloy;
3. Medical records of Mackery and Mackery;
4. Medical records of Lehigh Valley Health Center;
5. Medical records of Dr. Michael Marino;
6. Medical records of Physical Therapy Associates of NEPA;
7. Deposition transcript of Dr. Edwin Malloy;
8. Bureau of Workers' Compensation documents; and
9. NEPA Imaging Center.

Plaintiff states that Dr. Malloy was deposed regarding her workers' compensation claim after her accident and she produced his deposition transcript to Crown with her initial disclosures. (Doc. 70-2). Plaintiff states that while Dr. Malloy testified that she suffered injuries to her right knee, he also testified that she suffers with problems to her right shoulder and lumbar spine related to the accident. According to plaintiff, Dr. Malloy testified that when he first examined her after the accident she was being treated by Dr. Gideon for chronic pain in her right shoulder and lumbar spine. Plaintiff also states that she did testify that her problems with her back were caused by the accident.

Thus, plaintiff states that since she provided Crown with evidence of her injuries to her shoulder and back early in this case, Crown has been on notice that she would be presenting evidence at trial regarding her injuries to these areas of her body in addition to her right knee. As such, plaintiff contends that she should not be precluded from offering evidence that her injuries to her shoulder and back were related to the April 18, 2011 accident.

Crown's Doc. 64 motion in limine to exclude testimony and evidence allegedly not related to plaintiff's April 18, 2011 accident is **DENIED** insofar as it seeks to preclude plaintiff from offering evidence about her injuries to her shoulder and back since Dr. Malloy sufficiently links these injuries to the accident. In his treatment notes, Dr. Malloy repeatedly stated that plaintiff's work related injuries involved her right shoulder and right knee. While Dr. Malloy did not state that the accident caused plaintiff's lumbar spine condition, he did indicate that the accident exacerbated this condition. Thus, plaintiff will be allowed to present testimony and evidence regarding injuries to her back and right shoulder in addition to her right knee injuries.

Finally, Crown moves to exclude testimony and evidence of any alleged past problems with its SP48 stock picker that are unrelated to plaintiff's April 18, 2011 accident and injuries. (Doc. 65). Crown states that it anticipates plaintiff will testify that she experienced numerous problems with the stock picker prior to the accident that are not relevant to the issues in this case. As stated, plaintiff's remaining claims relate to alleged defects in the design of the stock picker's steering wheel fastening system and her allegation that on April 18, 2011 the steering wheel fell off of the stock picker onto her right knee and foot.

In her deposition, (Doc. 67-1), plaintiff stated that she had several reportable incidents while operating the stock picker. She said that the first one started six months after she commenced her job with Walmart in March

2007 when she felt a loss of power while operating the machine and it would stop causing her to jolt forward and then backwards "like a whiplash kind of thing." She stated that the stock picker would constantly do this. There were also several issues plaintiff experienced with the stock picker, including getting stuck up in the air and having to wait for it to cool down. Once the machine cooled down, she would push the button to lower the basket she was in causing the machine to "literally free fall" instead of the hydraulics working properly and descend the basket slowly. She said that this type malfunction happened to her about 10 or 12 times. Plaintiff also stated that there was a stopping problem with all of the stock pickers and, that "a lot of times the steering [was] really, really hard" and there was a "lot of tightness."

No doubt the steering wheel issues plaintiff had before the accident are clearly relevant to her remaining negligent design claim and her strict liability design defect claim with respect to the stock picker's steering wheel fastening system. However, since the court granted Crown's summary judgment motion with respect to plaintiff's claims alleging design defects with the stock picker's electrical drive system and hydraulic system, plaintiff will be precluded from testifying and offering evidence regarding the alleged problems she experienced with the stock pickers brakes and hydraulics since this evidence is no longer relevant to the remaining claims in this case.

Crown's Doc. 65 motion in limine to exclude testimony and evidence of past problems with the stock picker is **DENIED** insofar as it seeks to preclude

plaintiff from offering testimony and evidence regarding the steering wheel issues plaintiff had before the accident. The motion is **GRANTED** insofar as it seeks to preclude plaintiff from offering testimony and evidence regarding the alleged problems she experienced with the stock pickers brakes and hydraulics before the accident

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: May 3, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0978-02.wpd